UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRIDGESTONE BRANDS, LLC, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>HASSAN DASTGAH,<br><br>    Defendant. | Case No. 16-cv-00906-BLF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Re: ECF 11] |

On February 29, 2016, Plaintiffs Bridgestone Brands, LLC and Bridgestone Americas Tire Operations, LLC ("Firestone") filed an application for a temporary restraining order ("TRO") and preliminary injunction, seeking to enjoin Defendant Hassan Dastgah from representing that he is a Bridgestone or Firestone dealer, or that he, his business, or his activities are associated or connected in any way with Firestone, and to cover, remove, and destroy signage, business cards, uniforms, and other similar items bearing the FIRESTONE, FIRESTONE COMPLETE AUTO CARE, and BRIDGESTONE trademarks and names. Firestone personally served Mr. Dastgah with the Complaint and motion for a temporary restraining order. Plaintiff filed no opposition.

On March 17, 2016, the Court held a hearing on the motion for a temporary restraining order and Plaintiff appeared pro se. For the reasons stated on the record and contained herein, the motion for a TRO is GRANTED as set forth below and a hearing on the motion for a preliminary injunction is HEREBY SET for March 31, 2016 at 9:00 a.m.

I.   **BACKGROUND**

Firestone and its related and affiliated companies comprise the world's largest tire and rubber company. Pacsi Decl. ¶ 2 to Mot., ECF 11-2. Firestone develops, manufactures and sells FIRESTONE and BRIDGESTONE-branded tires. *Id*. at ¶ 7. It also offers a full assortment of

tires and automobile maintenance and repair services under the FIRESTONE mark. *Id*. at ¶ 11. Firestone owns the following U.S. trademark registrations for its FIRESTONE marks:

| Mark | Goods/Services | Reg. No. | Reg. Date |
|---|---|---|---|
| Firestone | Rubber tires | 0140804 | 03/29/1921 |
| Firestone | Vehicle tires and inner tubes therefor | 1387468 | 03/25/1986 |
| FIRESTONE | Vehicle tires and inner tubes therefor | 2464005 | 06/26/2001 |
| Firestone | Retail tire and automotive store services | 1178631 | 11/17/1981 |
| Firestone | Automotive repair and maintenance services | 3173847 | 11/21/2006 |
| Firestone | Retail tire store services | 3173840 | 11/21/2006 |
| FIRESTONE COMPLETE AUTO CARE | Retail tire and automobile parts and accessories store; automotive services, namely, automobile repair and maintenance | 3299861 | 09/25/2007 |

*Id*. at ¶ 8.

Additionally, the BRIDGESTONE mark, which Firestone uses under license from Bridgestone Corporation, is covered by the following U.S. trademark registrations:

| Mark | Goods/Services | Reg. No. | Reg. Date |
|---|---|---|---|
| BRIDGESTONE | Tires and inner tubes therefore | 2607465 | 8/13/2002 |
| BRIDGESTONE | Tires | 1342473 | 6/18/1985 |
| BRIDGESTONE | Tires | 2886688 | 9/21/2004 |

*Id*. at ¶ 9.

According to Firestone, it spends significant resources advertising, marketing, and promoting the FIRESTONE and BRIDGESTONE marks. Mot. 4-6 (citing Pacsi Decl. ¶¶ 15-21).

Mr. Dastgah owns and operates a tire and automotive services business at 1311 Camden Avenue in Campbell, California. Farquhar Decl. to Mot. ¶ 4, ECF 11-3. He applied to be an authorized FIRESTONE dealer but was turned twice. *Id*. at ¶ 2. Despite this, there are FIRESTONE and BRIDGESTONE logos displayed in several places around his business including on a white business van parked in his storefront driveway and on flags lining the front of

1  his store. *Id*. at ¶¶ 5-6. There is also a sign in the front window of his store that states it is
2  Bridgestone approved. *Id*. at ¶ 7. He has verbally told customers that his shop is a Firestone store,
3  and identified his store as "Campbell Firestone." *Id*. at ¶ 4; *see also* Exh. A to Farquhar Decl.,
4  ECF 11-4. His social media accounts also use the Firestone marks. Exhs. A and B to Schroeder
5  Decl., ECF 11-8, 11-9. Further, he uses FIRESTONE business cards and Bridgestone jackets and
6  overalls. Schroeder Decl. ¶¶ 8-10, ECF 11-7. The following is a photograph of Mr. Dastgah's
7  business card, which displays Firestone's FIRESTONE COMPLETE AUTO CARE MARK:



13 Farquhar Decl. to Mot. ¶ 4, ECF 11-3.
14  Mr. Dastgah's store is also located 1.13 miles from a genuine FIRESTONE store at 2120
15 Winchester Blvd. in Campbell, California. Pacsi Decl. ¶ 14, ECF 11-2. Customers have
16 complained to Firestone about Dastgah's service and business practices. Farquhar Decl. at ¶¶ 3-6,
17 ECF 11-3. For example, one customer complained to Firestone that Mr. Dastgah's shop refused to
18 honor a Firestone coupon, had inconsistent prices, long wait times, and refused to give a written
19 estimate. *Id*. ¶ 4.
20  Firestone has written to Mr. Dastgah and asked that he stop using their trademarks. *Id*. ¶ 7.
21 When he did not comply with Firestone's request, Firestone filed this action on February 23, 2016.
22 ECF 1. Firestone moved for a TRO on February 29, 2016, ECF11, and the Court set a briefing
23 schedule and a hearing on the TRO for March 17, 2016. Mr. Dastgah did not file any opposition
24 to Plaintiff's motion but did attend the hearing.

**II.   LEGAL STANDARD**

26  The substantive standard for issuing a temporary restraining order is identical to the
27 standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush*
28 *& Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*,

887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Alternatively, an injunction could issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation and internal quotation marks omitted). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

### III.  DISCUSSION

Before discussing the *Winter* factors, the Court notes that at the TRO hearing, Mr. Dastgah indicated he was attempting to comply with Plaintiffs' request. According to Mr. Dastgah, he had removed many of the signs and logos at issue. Plaintiffs also confirmed that Mr. Dastgah had in general been cooperative. However, as of the date of the hearing, Mr. Dastgah acknowledged not all of Firestone's signs and logos had been removed.

####    A.  Likelihood of Success
#####       i.  Counterfeiting Claim

The Court finds that Firestone is likely to succeed on its counterfeiting claim. The Lanham Act prohibits the use of "counterfeit" marks in connection with "the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(A). The state defines a counterfeit mark as a mark identical with or substantially indistinguishable from a registered mark. 15 U.S.C. § 1127.

Here, Mr. Dastgah appears to have copied Firestone's exact registered marks and used them for automotive repair and maintenance services, the same exact services covered by Firestone's registrations. Mr. Dastgah did not deny this claim at the hearing. As a result,

4

Firestone has shown it is likely to succeed on its counterfeiting claim. *See, e.g.*, *Ford Motor Co. v. Heritage Mgmt. Grp., Inc.*, 911 F. Supp. 2d 616, 628-29 (E.D. Tenn. 2012) (holding that an unauthorized use of FORD mark in packaging and sale of allegedly genuine Ford parts constituted counterfeiting).

### ii. Trademark Infringement and Unfair Competition Claim

The Court also finds that Firestone is likely to succeed on its trademark infringement and unfair competition claim. To establish trademark infringement, the trademark owner must show (1) ownership of a valid, protectable trademark and (2) a likelihood of confusion caused by the use of the mark. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

As to the first prong of trademark infringement, Firestone's federal trademark registrations for the marks at issue are "conclusive evidence of the validity," ownership, and "exclusive rights to use the registered mark[s] in commerce." 15 U.S.C. § 1115(b). Moreover, as a licensee of the BRIDGESTONE mark, Firestone can assert rights in that mark. *STX, Inc. v. Bauer USA, Inc.*, Case No. 96-CV-1140-FMS, 1997 WL 337578, at *3 (N.D. Cal. June 5, 1997).

As to the second prong of trademark infringement, the Ninth Circuit considers the following eight factors, known as the *Sleekcraft* factors, to assess whether likelihood of confusions exists: (1) the strength of the plaintiff's mark; (2) the proximity of the parties' goods; (3) the similarity of the parties' marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods or services and the degree of care likely to be exercised by purchases; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the parties' product line. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

The Court's review of the *Sleekcraft* factors indicates that there is a likelihood of confusion caused by Mr. Dastgah's use of the marks. Firestone has spent significant resources establishing the strength of their marks. The parties' marks are identical – Mr. Dastgah is using Firestone's marks without alteration or change. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). The parties' services and trade channels are identical. *Id.* ("[T]he more closely related the goods are, the more likely consumers will be confused by similar marks."). Mr.

Dastgah's automotive maintenance and repair services are not the types of product purchased with a high degree of care or deliberation. *See, e.g. Lee Myles Auto Grp., LLC v. Fiorillo*, Case No. 10-cv-6267-PKC, 2010 WL 3466687, at *6 (S.D.N.Y. Aug. 25, 2010) ("[G]iven the ubiquity of cars and trucks in our society, it is likely that the sophistication of [consumers of transmission repair services] will vary widely, and include unsophisticated individuals."). It appears Mr. Dastgah is using Firestone's mark in order to capitalize on their widespread consumer recognition. *Sleekcraft*, 599 F.2d at 354 ("When the alleged infringer knowingly adopts a mark similar to another's … courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."). There is also evidence of actual confusion on the parts of consumers. Farquhar Decl. at ¶ 4, ECF 11-3 (customer complaint to Firestone that Mr. Dastgah's shop refused to honor a Firestone coupon, had inconsistent prices, long wait times, and refused to give a written estimate). As a result, the *Sleekcraft* factors weigh in favor of finding a likelihood of confusion.

Accordingly, Firestone has shown a likelihood of success on its trademark infringement and unfair competition law claims.

### iii. Trademark Dilution Claim

The Court also has little trouble concluding that Firestone has shown a likelihood of success on if its trademark dilution claim. To prevail on its dilution claim, Firestone must show that (1) the FIRESTONE[1] mark is "famous and distinctive," (2) Mr. Dastgah "began using its mark in commerce after plaintiff's mark became famous and distinctive," and (3) Mr. Dastgah's mark is "likely to dilute" Firestone's mark. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010). Firestone's mark appears to be famous and distinctive, and Mr. Dustgah started using the mark after it became famous and was supported by significant resources. *See, e.g., Crossfit, Inc. v. Maximum Human Performance, LLC*, Case No. 12-cv-2348-BTM-MDD, 2013 WL 1627953, at *3 (S.D. Cal. Apr. 12, 2013) ("For the purposes of the preliminary injunction, CrossFit has offered sufficient evidence to indicate that it owns a famous mark,

---

[1] Firestone cannot assert dilution for the BRIDGESTONE mark because Firestone is a licensee and does not own it. MCCARTHY at § 29:99 ("[s]tanding to sue for a claim of dilution under Lanham Act § 43(c) is limited to 'the owner of a famous mark.'").

1  including that it currently licenses over 4,600 affiliate gyms and hosts an annual international
2  workout competition televised nationally by ESPN."). As to the third factor, Mr. Dastgah's use of
3  an identical mark to offer automobile maintenance and repair services of varying quality is likely
4  to dilute Firestone's mark. *See, e.g., New York Stock Exchange, Inc. v. New York, New York Hotel*
5  *LLC*, 293 F.3d 550, 558 (2d Cir. 2002).

### B.     Irreparable Harm, Balance of Hardships, and Public Interest

Turning to the second *Winter* factor, likelihood of irreparable harm absent a TRO, damage to a trademark owner's good will and business reputation constitute irreparable injury. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) (finding irreparable harm where defendant "poses a serious threat to [plaintiff's] goodwill and reputation.").

With respect to the third and fourth *Winter* factors, the equities tip in favor of Firestone, which is attempting to protect its mark but not prevent Mr. Dastgah from operating his business. Moreover, at the TRO hearing, Mr. Dastgah noted he had begun to comply with Firestone's demand, which also indicates the balance of hardships weighs in Firestone's favor. Finally, in trademark cases, granting a TRO is in the public interest because it protects "the right of the public not to be deceived or confused." *Vertos Med., Inc. v. Globus Med., Inc.*, No. C 09-1411 PJH, 2009 WL 3740709, at *12 (N.D. Cal. Nov. 6, 2009) ("In the trademark context, courts often define the public interest as the right of the public not to be deceived or confused.").

### C.     Bond

Federal Rule of Civil Procedure 65(c) provides that a TRO will only issue "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the bond is within the discretion of this Court. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000). Under the facts of this case, the Court finds a minimal bond of $500 is appropriate.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Firestone's motion for a

temporary restraining order is GRANTED. Therefore, the Court hereby ORDERS as follows:

1. Plaintiffs shall post with the clerk of the court a bond or other security in the amount of five hundred (500) dollars on or before Tuesday, March 22, 2016 at 4:00 p.m.

2. Mr. Dastgah, his employees, agents, representatives, companies, and all persons and entities in active concert or participation with any of them are hereby temporarily restrained, effective immediately, from representing by any means whatsoever, directly or indirectly, that Mr. Dastgah is a Bridgestone or Firestone dealer or that Mr. Dastgah, his business, or his activities are associated or connected in any way with Firestone or sponsored, licensed, or authorized by Firestone.

3. Mr. Dastgah must immediately cover, remove, and destroy, at his sole cost, signage, business cards, uniforms, and other similar items bearing the FIRESTONE, FIRESTONE COMPLETE AUTO CARE, and BRIDGESTONE trademarks and names.

4. Mr. Dastgah shall show cause at a hearing on March 31, 2016 at 9:00 a.m., in Courtroom 3, 5th Floor, 280 South First Street, San Jose, California, 95113, concerning why Mr. Dastgah, his employees, agents, representatives, companies, and all persons and entities in active concert or participation with any of them, should not be restrained and enjoined pending trial of this action as described above.

5. Plaintiffs, or their authorized agents, are directed to serve a copy of this Order and papers upon which this Order is based upon Mr. Dastgah by 5:00 p.m. on March 21, 2016, which shall constitute sufficient service of process thereof;

6. Mr. Dastgah shall have until 5:00 p.m. on March 28, 2016 to file with the Court and serve on Plaintiffs' counsel, Robert F. McCauley, Finnegan Henderson Farabow Garrett & Dunner LLP, 3300 Hillview Avenue, Palo Alto, CA 94304, any points and authorities, affidavits or declarations, or other evidence in opposition to the Order to Show Cause Regarding Preliminary Injunction.

7. This Order shall expire on its own terms at 5 p.m. on March 31, 2016, unless further extended by Order of this Court.

8. For good cause shown and upon written application to the Court, this Order may be

1     extended for a longer period determined by the Court.

2   9. Mr. Dastgah is currently proceeding pro se. He may wish to contact the Federal Pro Se Program, a free program that offers limited legal services and advice to parties who are representing themselves. The Federal Pro Se Program has offices in two locations, listed below. Help is provided by appointment and on a drop-in basis. Parties may make appointments by calling the program's staff attorney, Mr. Kevin Knestrick, at 408-297-1480. Additional information regarding the Federal Pro Se Program is available at http://cand.uscourts.gov/helpcentersj.

| Federal Pro Se Program | Federal Pro Se Program |
|---|---|
| United States Courthouse | The Law Foundation of Silicon Valley |
| 280 South 1st Street | 152 North 3rd Street |
| 2nd Floor, Room 2070 | 3rd Floor |
| San Jose, CA 95113 | San Jose, CA 95112 |
| Monday to Thursday 1:00 pm – 4:00 pm | Monday to Thursday 9:00 am – 12:00 pm |
| Fridays by appointment only | Fridays by appointment only |

**IT IS SO ORDERED.**

Dated: March 18, 2016

_____
BETH LABSON FREEMAN
United States District Judge